UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| JOHN HUDSON FARMS, INC., | ) | |
| PHILLIP HUDSON, | ) | |
| JOSHUA HUDSON, | ) | |
| JEREMY HUDSON, | ) | |
| WENDY GIDDENS, | ) | |
| JACOB GIDDENS, AND | ) | |
| SETH GIDDENS | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through the United
States Attorney for the Eastern District of North Carolina,
hereby files this Complaint and states:

<u>INTRODUCTION</u>

1.    This is an action brought by the United States of
America to recover statutory damages and civil penalties under
the False Claims Act, 31 U.S.C. §§ 3729, <u>et</u> <u>seq.</u>, to recover all
available damages for common law fraud, unjust enrichment,
payment under mistake of fact, and to collect a debt.  These
claims arise out of Defendants' applications for, and receipt
of, government monies to which they were not entitled and to
which they have failed to repay, and also their causing the

submission of false claims to the United States under the federal crop insurance program.

JURISDICTION AND VENUE

2.   This action arises under the False Claims Act 31 U.S.C. §§ 3729-3733, and at common law.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1331.

3.   Venue is proper in the Eastern District of North Carolina, pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and 31 U.S.C. § 3732(a).   The defendants can be found, reside, and transact business within this district, and the acts proscribed by the False Claims Act occurred within this district.

PARTIES

4.   Plaintiff, United States of America ("the United States") is acting on behalf of its agencies, the Farm Service Agency, United States Department of Agriculture ("FSA") and Risk Management Agency, United States Department of Agriculture ("RMA").   FSA and RMA are agencies and instrumentalities of the United States and their activities, operations, and contracts are paid from federal funds.

5.   Defendant John Hudson Farms, Inc. ("JHF") is a North Carolina corporation with its principal place of business in Sampson County, North Carolina, and is in the business of farming mostly soybeans, sweet potatoes and tobacco primarily in

2

Sampson, Johnston, and Wayne Counties, North Carolina. JHF has been engaged in farming since 1993, and employs approximately fifteen to twenty full-time employees. Charlotte Hudson is the President of JHF.

6. Defendant Phillip Hudson ("Phil Hudson") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 553 Rosin Hill Road, Newton Grove, North Carolina 28366. At all times relevant to this Complaint, Defendant Phil Hudson was an officer of JHF, and managed the day-to-day operations of JHF.

7. Defendant Joshua Hudson ("Joshua Hudson") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 553 Rosin Hill Road, Newton Grove, North Carolina 28366.

8. Defendant Jeremy Hudson ("Jeremy Hudson") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 553 Rosin Hill Road, Newton Grove, North Carolina 28366.

9. Defendant Wendy Giddens ("Wendy Giddens") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 2577 Rosin Hill Road, Newton Grove, North Carolina 28366. At all times relevant to this Complaint, Wendy Giddens was a full-time employee with the State of North Carolina.

3

10.  Defendant Jacob Giddens ("Jacob Giddens") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 553 Rosin Hill Road, Newton Grove, North Carolina 28366.

11.  Defendant Seth Giddens ("Seth Giddens") is a citizen and resident of Sampson County, North Carolina, and more specifically has a mailing address of 553 Rosin Hill Road, Newton Grove, North Carolina  28366.

## FACTUAL ALLEGATIONS

12.  FSA administers a farm loan program that allows eligible recipients to receive loans for farm operating expenses ("FSA Farm Program Loans").  FSA finances and services the FSA Farm Program Loans.

13.  At all times relevant to this Complaint, FSA imposed eligibility requirements for recipients of FSA Farm Program Loans, and annual limitations on the amount a qualified recipient could borrow.

14.  FSA also administers farm programs that provide for cash payments to eligible recipients.  These programs include (1) the Direct and Counter Cyclical Program ("DCP"), (2) the Noninsured Crop Disaster Assistance Program ("NAP"), (3) the Supplemental Revenue Assistance Program ("SURE"), (4) the Livestock Feed Program ("LFP"), (5) the Livestock Indemnity Program ("LIP") and (6) the Cotton Transition Assistance Program

4

("CTAP"). Payments under these FSA Programs (hereinafter "FSA Program Payments") are made from the United States through FSA and the Commodity Credit Corporation, an instrumentality of the United States, provided that the recipient qualifies under the relevant regulations for participation in the Program.

15. At all times relevant to this Complaint, FSA imposed eligibility requirements for recipients of FSA Program Payments, and annual payment limitations on the amount a qualified recipient could obtain from FSA.

16. To qualify for participation in the FSA Farm Loan program and/or to receive FSA Program Payments a person is required to truthfully complete and sign certain documents. Prior to 2009, one of these required documents was Form CCC-502A, a "Farm Operating Plan For Payment Eligibility Review For An Individual" ("Form 502"). Form 502 was amended in 2009, and since 2009, has been known as Form CCC-902I entitled "Farm Operating Plan For An Individual" ("Form 902").

17. At all times relevant to this Complaint, FSA relied on the representations on the Form 502s and Form 902s to determine an individual farmer's eligibility to receive FSA Farm Program Loans and FSA Program Payments. Form 902 explicitly states the form is "For 'actively engaged' in farming and other payment eligibility and limitation determinations."

5

## The Defendants' Fraudulent Scheme or Device

18. Beginning in 2008, and through at least 2014, the Defendants participated in a fraudulent scheme or device to circumvent FSA's payment eligibility and annual limitations rules for FSA Farm Program Loans and FSA Program Payments. Specifically, Defendants Phil Hudson, Joshua Hudson, Jeremy Hudson, Wendy Giddens, Jacob Giddens, and Seth Giddens (hereinafter "the individual Defendants") created "shell farming operations," in their own names, falsely representing to FSA and others to be operating separate, individual farming operations, each eligible to receive FSA Farm Program Loans and FSA Program Payments. However, these purportedly separate, individual farming operations in the names of the individual Defendants were merely part of the single farming operation of JHF. As a result of the individual Defendants' creation of these "shell farming operations," the individual Defendants received significant Federal funds for which they were not eligible, and therefore not entitled, to receive. These funds were ultimately used to support the single farming operation of JHF, not individual farmers.

19. In furtherance of their fraudulent scheme or device, at various times since 2008, the individual Defendants, or their agents, signed or caused to be signed various documents in connection with filing for and obtaining FSA Farm Program Loans

6

and FSA Program Payments, including, false Form 502s in 2008 and multiple Form 902s since 2009. Upon information and belief, the Form 502s and Form 902s submitted by the individuals Defendants, or their agents, contained false and misleading information resulting in the circumvention of FSA Farm Loan Program and FSA Program Payment eligibility and limitations rules. Specifically, the individual Defendants, or their agents, misrepresented the contributions of capital, equipment, land, active personal labor, active personal management of their farming operations and falsely denied that any other entity, which would include JHF, had an interest in their farming operation.

20. Additionally, in furtherance of their fraudulent device or scheme, the individual Defendants obtained crop insurance for their purportedly separate, individual farming operations. To obtain said crop insurance and on their loss claims, the individual Defendants misrepresented their insurable interest in the insured crops, resulting in their receipt of crop insurance indemnity payments they were not eligible, and therefore not entitled, to receive. The private insurers' claims for reimbursement through reinsurance with the Federal government resulted in the United States paying false claims.

<u>False and Fraudulent 2008 Form 502s</u>

21. On their 2008 Form 502s, Joshua Hudson, Jeremy Hudson,

7

and Seth Giddens, through their agent Jacob Giddens acting through a Power of Attorney, falsely represented, among other things, that: (1) they provided 100% of the capital for their farming operation, (2) they leased 100% of the equipment from JHF and JHF did not have an interest in their farming operation, (3) they leased land from several others, including JHF, for cash, (4) they each provided 1,000 hours of the active personal labor for their farming operation, and (5) they provided 100% of the active personal management for their farming operation.

22.   On their 2008 Form 502, Phil Hudson and Wendy Giddens, through their agent Jacob Giddens acting through a Power of Attorney, made the same false representations as those set forth in paragraph 21 except Wendy Giddens, or her agent Jacob Giddens, made no representations regarding the equipment she would use and Phil Hudson stated he would provide 2,500 hours of the active personal labor and owns 100% of the equipment he would use.

23.   Jacob Giddens executed his own Form 502 in 2008.   He made the same false representations as those set forth in paragraph 21 except he represented that 85% of the equipment he will use is owned by JHF, and 15% is owned by Phil Hudson.   He falsely represented neither has an interest in his farming operation.

24.   The individual Defendants and/or their agent knew the

8

information provided on their 2008 Form 502s would be used by FSA to determine whether they were a "person," "actively engaged in farming," "[s]eparate and distinct from any other individual or entity," and/or otherwise eligible to receive FSA Farm Program Loans and FSA Program Payments, and that information provided on their 2008 Form 502 was false (including the information referenced above).

25. Based on the false information provided on their Form 502s, the individual Defendants were determined by FSA to be eligible for FSA Farm Program Loans and FSA Program Payments.

26. The individual Defendants did not provide 100% of the capital for their purported farming operation as represented on their Form 502s; rather, the capital was provided at least in part, if not entirely, by JHF.

27. JHF had an interest in the purported farming operations of Joshua Hudson, Jeremy Hudson, Jacob Giddens, and Seth Giddens, and thus, their representations otherwise were false. In fact, the purported farming operations of the individual Defendants were not separate, individual farming operations at all, but were part the single farming operation of JHF.

28. There were no written lease agreements between JHF and the individual Defendants did not "lease" land from JHF for cash as represented on their Form 502s.

9

29. The individual Defendants did not provide the active personal labor for their purported farming operations as represented on their Form 502s; rather, it was provided at least in part, if not entirely, by JHF.

30. The individual Defendants did not provide 100% of the active personal management for their purported farming operations as represented on their Form 502s; rather, it was provided at least in part, if not entirely, by JHF.

31. The individual Defendants did not operate separate, individual farms as represented on their Form 502s and as required to be eligible for FSA Farm Program Loans and FSA Program Payments.

32. The individual Defendants were not "actively engaged in farming" as represented on their Form 502s, and as required to be eligible for FSA Farm Program Loans and FSA Program Payments.

33. The false representations on the Form 502s of the individual Defendants, through their agent Jacob Giddens, resulted in the circumvention of FSA's Farm Loan Program and Program Payment eligibility and limitations rules, and Defendants' receipt of FSA Farm Program Loans and FSA Program Payments to which they were not entitled.

## The Individual Defendants' False and Fraudulent
## 2009, 2010, and 2012 Form 902s

34. Phil Hudson, acting through a power of attorney, executed the 2009 Form 902s for Joshua Hudson, Jeremy Hudson, Wendy Giddens, Jacob Giddens, and Seth Giddens. Phil Hudson executed his own 2009 Form 902.

35. Phil Hudson, acting through a Power of Attorney, executed the 2010 Form 902s for Joshua Hudson, Jeremy Hudson, Wendy Giddens, and Seth Giddens. Phil Hudson and Jacob Giddens executed their own Form 902s in 2010.

36. Phil Hudson, acting through a power of attorney, executed the 2012 Form 902s for Joshua Hudson, Jeremy Hudson, Wendy Giddens, Jacob Giddens, and Seth Giddens. Phil Hudson executed his own Form 902 in 2012.

37. The individual Defendants, or their agents, made false representations on the 2009, 2010 and/or 2012 Form 902s, including that: (1) they leased land from JHF for cash, (2) they provided 80% of the active personal labor for their purported farming operations, and (3) they provided 100% of the active personal management for their purported farming operations.

38. On their 2009 and/or 2010 Form 902s, the individual Defendants and/or their agent falsely represented that they leased 100% of the equipment from JHF and that JHF did not have an interest in their purported farming operation.

11

39. On their 2012 Form 902s, the individuals Defendants and/or their agent falsely represented that they contributed 100% of the capital to their farming operation.

40. The individual Defendants and/or their agents knew the information provided on their Form 902s would be used by FSA to determine whether they were a "person," "actively engaged in farming," "[s]eparate and distinct from any other individual or entity," and/or otherwise eligible to receive FSA Farm Program Loans and FSA Program Payments, and that the information provided on the Form 902s was false (including the information referenced above).

41. Based on the false information provided on their Form 902s, the individual Defendants were determined by FSA to be eligible for FSA Farm Program Loans and FSA Program Payments.

42. The individual Defendants did not provide 100% of the capital for their farming operation as represented on their 2012 Form 902s; rather, the capital was provided at least in part if not entirely, by JHF.

43. The individual Defendants did not lease equipment from JHF as represented on their 2009 and 2010 Form 902s. Further, Defendant JHF had an interest in their purported farming operations. In fact, upon information and belief, the purported farming operations of the individual Defendants were not separate, individual farming operations at all, but were part of

12

the single farming operation of JHF.

44. There were no written lease agreements between JHF and the individual Defendants and the individual Defendants did not "lease" land from JHF for cash as represented on their Form 902s.

45. The individual Defendants did not provide 80% of the active personal labor for their purported farming operations as represented on their Form 902s; rather, the active personal labor was provided mostly, if not entirely, by JHF.

46. The individual Defendants did not provide 100% of the active personal management for their purported farming operations as represented on their Form 902s; rather, it was provided at least in part if not entirely by JHF.

47. The individual Defendants did not operate separate, individual farms as represented on their Form 902s and as required to be eligible for FSA Farm Program Loans and FSA Program Payments.

48. The individual Defendants were not "actively engaged in farming" as represented on their Form 902s and as required to be eligible for FSA Farm Program Loans and FSA Program Payments.

49. The false representations on the Form 902s of the individual Defendants resulted in the circumvention of FSA's Farm Loan Program and Program Payment eligibility and limitations rules.

50. The false representations on the Form 902s of the individual Defendants resulted in these Defendants' receipt of FSA Farm Program Loans and/or FSA Program Payments to which they were not entitled in 2009, 2010, 2011, 2012, 2013, and 2014.

51. As a result of the fraudulent scheme or device, Phil Hudson received $424,065.00 in FSA Program Payments to which he was not entitled. Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of JHF.

52. Had Defendants disclosed the false representations in Phil Hudson's Form 902s, Phil Hudson would have received no FSA Farm Program Loans or FSA Program Payments, in that he would have been determined to be ineligible to participate in FSA Programs.

53. As a result of the fraudulent scheme or device, Joshua Hudson received $216,498.00 in FSA Program Payments to which he was not entitled. Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of Defendant JHF.

54. Had Defendants disclosed the false representations in Joshua Hudson's Form 902s, Joshua Hudson would have received no FSA Farm Program Loans or FSA Program Payments, in that he would have been determined to be ineligible to participate in FSA Programs.

14

55. As a result of the fraudulent scheme or device, Jeremy Hudson received $221,142.00 in FSA Program Payments to which he was not entitled. Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of JHF.

56. Had Defendants disclosed the false representations in Jeremy Hudson's Form 902s, Jeremy Hudson would have received no FSA Farm Program Loans or FSA Program Payments, in that he would have been determined to be ineligible to participate in FSA Programs.

57. As a result of the fraudulent scheme or device, Wendy Giddens received $423,107.00 in FSA Program Payments to which she was not entitled. Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of JHF.

58. Had Defendants disclosed the false representations in Wendy Giddens' Form 902s, Wendy Giddens would have received no FSA Farm Program Loans or FSA Program Payments, in that she would have been determined to be ineligible to participate in FSA Programs.

59. As a result of the fraudulent scheme or device, Jacob Giddens received $219,210 in FSA Program Payments to which he was not entitled. Upon information and belief, the majority, if

15

not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of JHF.

60.   Had Defendants disclosed the false representations in Jacob Giddens' Form 902s, Jacob Giddens would have received no FSA Farm Program Loans or FSA Program Payments, in that he would have been determined to be ineligible to participate in FSA Programs.

61.   As a result of the fraudulent scheme or device, Seth Giddens received $222,489 in FSA Program Payments to which he was not entitled.  Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments were used to support the single farming operation of JHF.

62.   Had Defendants disclosed the false representations in Seth Giddens' Form 902s, Seth Giddens would have received no FSA Farm Program Loans or FSA Program Payments, in that he would have been determined to be ineligible to participate in FSA Programs.

<u>False and Fraudulent Form 902s of Jessica Hudson</u>

63.   Jessica Hudson, now Jessica Herring, married Jeremy Hudson in April 2010.  They divorced in 2013.

64.   In furtherance of the Defendants' fraudulent scheme or device to circumvent the FSA Farm Program Loan and FSA Program Payments eligibility requirements and payment limitations for a single farming entity, and to obtain additional government funds

16

to support the single farming operation of JHF, Jessica Hudson was used by Defendants to seek additional FSA Program Payments.

65. In October 2011, a Form 902 in Jessica Hudson's name was submitted to FSA. The Form 902 was executed by Jacob Giddens, acting through a Power of Attorney. The 2011 Form 902 represents that Jessica Hudson would (1) provide 100% of the capital for her farming operation, (2) lease 100% of the equipment from Defendant JHF and Defendant JHF did not have an interest in her farming operation, (3) lease land from JHF for cash, (4) provide 20% of the active personal labor for her farming operations, and (5) provide 100% of the active personal management for her farming operations. These representations were false.

66. In September 2012, another Form 902 in Jessica Hudson's name was submitted to FSA. The 2012 Form 902 was executed by Defendant Phil Hudson, acting through a Power of Attorney. The Form 902 represents that Jessica Hudson would (1) provide 100% of the capital for her farming operation, (2) lease land from JHF for cash, (3) provide 20% of the active personal labor for her farming operations, and (4) provide 100% of the active personal management for her farming operations. These representations were false.

67. Jacob Giddens and Phil Hudson knew that the information provided on Jessica Hudson's Form 902s would be used

by FSA to determine whether she was a "person," "actively engaged in farming," "[s]eparate and distinct from any other individual or entity," and/or otherwise eligible to receive FSA Farm Program Loans and FSA Program Payments, and that the information provided on the Form 902s was false (including the information referenced above).

68. Based on the false information provided on the Form 902s, Jessica Hudson was determined by FSA to be eligible for FSA Farm Program Loans and FSA Program Payments.

69. The false representations on the Form 902s of Jessica Hudson resulted in the circumvention of FSA's Program Payments eligibility requirements and limitations rules, and resulted in Jessica Hudson receiving $13,235.00 in FSA Program Payments to which she was not entitled. Upon information and belief, the majority, if not all, of the wrongfully received FSA Program Payments was transferred to JHF and used to support the single farming operation of JHF.

70. Had Defendants disclosed the false representations in Jessica Hudson's Form 902s, Jessica Hudson would have received no FSA Program Payments, in that she would have been determined to be ineligible to participate in FSA Programs.

<u>Defaulted FSA Farm Program Loans</u>

71. In 2010, Wendy Giddens, received a Farm Program Loan from FSA in the following amount:

| Date | Amount | Interest Rate | Type |
|---|---|---|---|
| June 9, 2010 | $200,000.00 | 2.875% | Operating |

A copy of the aforesaid Promissory Note is attached hereto and by reference made a part hereof as Exhibit A.

72. In order to secure payment of the aforesaid Promissory Note, Wendy Giddens executed a Security Agreement covering all farm equipment and livestock more fully described therein, as well as replacements, substitutions, additions and accessions thereto, and perfected the aforesaid Security Agreement in the Financing Statements as described below:

| Security Agreement Date | Financing Statement Date | File No. | Continuation Date | File No. |
|---|---|---|---|---|
| 06/09/2010 | 06/17/2010 | 20100048141B | 06/25/2015 | 20150061188C |
| | N. C. Secretary of State | | | |

A copy of the Security Agreement is attached hereto as Exhibit B. A copy of the Financing Statement and Continuation Statement are attached hereto as Exhibit C-1 and C-2.

73. Wendy Giddens disposed of livestock security without the knowledge or consent of FSA and did not account to FSA for the proceeds and did not turn those proceeds over to FSA.

74. In February 2010, Seth Giddens, received a Farm Program Loan from FSA in the following amount:

| Date | Amount | Interest Rate | Type |
|---|---|---|---|
| February 11, 2010 | $200,000.00 | 2.625% | Operating |

A copy of the aforesaid Promissory Note is attached hereto and by reference made a part hereof as Exhibit D.

19

75. In order to secure payment of the aforesaid Promissory Note, Seth Giddens executed a Security Agreement covering farm equipment more fully described therein, as well as replacements, substitutions, additions and accessions thereto, and perfected the aforesaid Security Agreement in the Financing Statement and Continuation Statement as described below:

| Security Agreement Date | Financing Statement Date | File No. | Continuation Date | File No. |
|---|---|---|---|---|
| 02/11/2010 | 02/12/2010 | 20100011669H | 12/16/2014 | 20140115851K |
| | N. C. Secretary of State | | | |

A copy of the Security Agreement is attached hereto as Exhibit E. A copy of the Financing Statement and Continuation Statement are attached hereto as Exhibit F-1 and F-2.

76. Jeremy Hudson received Farm Program Loans from FSA in the following amounts:

| Date | Amount | Interest Rate | Type |
|---|---|---|---|
| March 11, 2009 | $100,000.00 | 2.00% | Operating |
| November 19, 2009 | $100,000.00 | 2.875% | Operating |

A copy of the aforesaid Promissory Notes are attached hereto and by reference made a part hereof as Exhibits G-1 and G-2.

77. In order to secure payment of the aforesaid Promissory Notes, Jeremy Hudson executed two Security Agreements covering all crops and farm equipment more fully described therein, as well as replacements, substitutions, additions and accessions thereto, and perfected the aforesaid Security Agreements in the Financing Statements and Continuation Statements as described

below:

| Security Agreement | Financing Statement | | Continuation | |
|---|---|---|---|---|
| Date | Date | File No. | Date | File No. |
| 03/11/2009 | 03/11/2009 | 20090018261M | 03/11/2014 | 20140021427E |
| 11/19/2009 | 11/20/2009 | 20090087471K | 10/30/2014 | 20140101554E |
| | 03/10/2014 | 20140021223J | | |
| | N. C. Secretary of State | | | |

A copy of the Security Agreements is attached hereto as Exhibits H-1 and H-2. A copy of the Financing Statements and Continuation Statements is attached hereto as Exhibits I-1 to I-5.

78. Joshua Hudson received Farm Program Loans from FSA in the following amounts:

| Date | Amount | Interest Rate | Type |
|---|---|---|---|
| March 11, 2009 | $100,000.00 | 2.00% | Operating |
| November 19, 2009 | $100,000.00 | 2.875% | Operating |

A copy of the aforesaid Promissory Notes are attached hereto and by reference made a part hereof as Exhibits J-1 and J-2.

79. In order to secure payment of the aforesaid Promissory Notes, Joshua Hudson, executed two Security Agreements covering all crops and farm equipment more fully described therein, as well as replacements, substitutions, additions and accessions thereto, and perfected the aforesaid Security Agreements in the Financing Statements and Continuation Statements as described below:

| Security Agreement | Financing Statement | | Continuation | |
|---|---|---|---|---|
| Date | Date | File No. | Date | File No. |
| 03/11/2009 | 03/11/2009 | 20090018205J | 03/11/2014 | 20140021437F |
| | | | 07/15/2015 | 20150068004H |
| 11/19/2009 | 11/20/2009 | 20090087476E | 10/30/2014 | 2014010558J |
| | 03/10/2014 | 20140021225M | 07/15/2015 | 20150067980K |

N. C. Secretary of State

A copy of the Security Agreements is attached hereto as Exhibits K-1 and K-2. A copy of the Financing Statements and Continuation Statements is attached hereto as Exhibits L-1 to L-7.

80. The aforesaid Notes and Security Agreements provided, inter alia, that in the event of default in the payment of any installment due under the Notes, the entire principal and interest shall become due and payable without notice, at the option of the holder of the Notes.

81. Said Notes and Security Agreements further provide for the Plaintiff to make certain advances as therein provided for the account of the makers of the Notes and of the Defendants, and for the charging of interest thereon, and that said Notes and Security Agreements may be foreclosed with costs of foreclosure to be charged against the proceeds of any sale thereunder.

82. The United States, by and through its aforesaid officer, is the owner and holder of the Notes.

83. Wendy Giddens, Seth Giddens, Jeremy Hudson and Joshua Hudson have failed to make payment on the said Notes as required therein, although due demand has been made upon them to do so. Plaintiff has therefore elected, and does hereby elect, to declare the entire balance of the indebtedness due upon the said Notes and Security Agreements, together with all amounts due for

22

charges, and advances now due and payable. There is now due upon said Promissory Notes, and Security Agreements as follows:

    a.   Wendy Giddens, the principal amount of $119,295.83 with interest of $3,041.36 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $9.3966 until paid. Said balance includes a protective advance made by Plaintiff. An official Affidavit of Indebtedness is attached hereto as Exhibit M and incorporated herein by reference;

    b.   Seth Giddens, the principal amount of $107,456.14 with interest of $1,901.08 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $7.7280 until paid. An official Affidavit of Indebtedness is attached hereto as Exhibit N and incorporated herein by reference;

    c.   Jeremy Hudson, the principal amount of $88,207.55 with interest of $2,811.93 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $6.1968 until paid. An official Affidavit of Indebtedness is attached hereto as Exhibit O and incorporated herein by reference;

    d.   Joshua Hudson, the principal amount of $101,176.30 with interest of $3,403.62 accrued as of November 30, 2017, with interest accruing daily after that

23

date in the amount of $6.9705 until paid. Said balances include a protective advance made by Plaintiff. An official Affidavit of Indebtedness is attached hereto as Exhibit P and incorporated herein by reference.

84. As set forth above, Wendy Giddens, Seth Giddens, Jeremy Hudson, and Joshua Hudson made false representations to FSA in order to be eligible to receive the aforementioned FSA Farm Program Loans. Specifically, as set forth more specifically above, these individuals falsely represented to FSA at the time they applied for these loans, they were operating separate, individual farming operations when they were not.

85. As a result of their false and fraudulent representations, Wendy Giddens, Seth Giddens, Jeremy Hudson, and Joshua Hudson received FSA Farm Program Loans to which they were not entitled, and for which they have failed to repay.

<u>The Individual Defendants' False and Fraudulent</u>
<u>Crop Insurance Indemnity Claims</u>

86. RMA administers the federal crop insurance program on behalf of the Federal Crop Insurance Corporation ("FCIC"), a wholly owned government corporation within the United States Department of Agriculture.

87. The FCIC contracts with private approved insurance providers ("AIPs") to offer crop insurance policies to eligible farmers.

24

88.  Under the program, eligible farmers purchase policies from the AIPs.  The AIPs are reinsured by the FCIC in accordance with the terms of a standard reinsurance agreement ("SRA").

89.  When a farmer incurs a loss to an insured crop, the farmer files a claim with the AIP.  The AIP assesses the amount of the loss, pays the farmer's claim for damage, and then seeks reimbursement from the FCIC.  The FCIC reimburses the AIP for all or part of the amount paid to the farmer, depending on the particular arrangement set forth in the SRA.  The FCIC also subsidizes a portion of the premiums paid by the insured farmers.  The funds used by FCIC to reimburse the AIPs are federal funds.

90.  To obtain crop insurance, a farmer must have a bona fide interest, or "insurable interest," in the crop at the time coverage begins and must submit an application for insurance through an insurance agent.

91.  An "insurable interest" is the value of the producer's interest in the crop that is at risk from an insurable cause of loss during the insurance period.  The maximum indemnity payable to the producer may not exceed the indemnity due on the producer's insurable interest at the time of loss.

92.  A producer who does not have an insurable interest in a crop cannot obtain crop insurance.

93.  To the extent a producer has a shared interest in a

25

crop, he is eligible to receive crop insurance for only the amount of his interest.

94. Once a private insurance company accepts an application for insurance and issues an insurance policy to the farmer, the farmer must report and certify each year to the insurance company that he has an interest in the insured crop. These reports are called "acreage reports."

95. In furtherance of their fraudulent scheme or device, the individual Defendants applied for and obtained private crop insurance from AIPs, who were reinsured by FCIC.

96. The individual Defendants were not eligible to obtain crop insurance because they did not have an insurable interest in the crops they insured. Rather, the insurable interest belonged to Defendant JHF.

97. Alternatively, the individual Defendants were not eligible to obtain the level of crop insurance they obtained because they did not possess the insurable interest they represented to the AIPs that they possessed.

98. Upon information and belief, the AIPs relied on the individual Defendants' representations in certain documents to determine whether the individual Defendants were eligible for crop insurance, including the individual Defendants' applications for insurance, and the Form 502s and/or Form 902s submitted to FSA.

26

99. As a result of the individual Defendants' false representations on the Form 502s and Form 902s submitted to FSA, and their false representations that they owned an insurable interest in the crops they sought to insure, the individual Defendants were deemed eligible to obtain crop insurance for their purportedly separate, individual farming operations.

100. Had the private insurers been aware of the individual Defendants' false representations, and that the individual Defendants' did not own an insurable interest in the crops they sought to insure, the individual Defendants would have been deemed ineligible to receive the crop insurance.

101. Alternatively, had the private insurers been aware of the individual Defendants' false representations, and that the individual Defendants' insurable interest in the crops they sought to insure was less than the amount claimed by the individual Defendants, the individual Defendants would have been ineligible to receive the level of crop insurance they received.

102. In furtherance of their fraudulent scheme or device, during 2010, 2011, 2012, 2013, and 2014, the individual Defendants falsely certified their insurable interest on acreage reports and insurance claims submitted to the AIPs. Phil Hudson did the same in 2015. Each of these false certifications was a false statement.

103. In 2010, 2011, 2012, 2013, and 2014, the individual

Defendants filed claims with AIPs, and the AIPs paid the individual Defendants for those purported losses. The same occurred in 2015 for Phil Hudson. The FCIC ultimately reimbursed the AIPs for those insurance claims and for premium subsidies on the individual Defendants' policies. The estimated amount reimbursed for those payments is $2,639,511.00.

104. Because the AIPs submitted claims for reimbursement to FCIC for the individual Defendants' indemnity claims, and the individual Defendants were ineligible to receive crop insurance, the individual Defendants caused the AIPs' submission of false claims to the United States.

105. Alternatively, because the AIPs submitted claims for reimbursement to FCIC for amounts greater than the individual Defendant's insurable interest, the individual Defendants caused the AIPs' submission of false claims to the United States.

106. Upon information and belief, JHF had most, if not all, of the insurable interest in the crops the individual Defendants insured.

107. Upon information and belief, JHF paid the insurance premium for the crop insurance paid by the individual Defendants.

108. In furtherance of their fraudulent scheme or device, and as evidence of JHF having most, if not all, of the insurable interest in the crops the individual Defendants insured, the

28

individual Defendants passed almost all of the crop insurance indemnity payments they received to JHF.

109. For example, a check dated December 19, 2011, from Ace Property and Casualty Insurance Company was made payable to Wendy Giddens and First Citizen Bank in the amount of $64,861.00 for Loss No. 11-000725. The check was deposited into a checking account in the name of Wendy Giddens at First Citizens Bank. The following day, on December 20, 2011, a check made payable to John Hudson Farms was written on the same First Citizen account in the amount of $66,000.00. The check was signed by Phil Hudson.

110. On January 20, 2012, a check from Ace Property and Casualty Insurance Company was made payable to Wendy Giddens and First Citizen Bank in the amount of $92,768.00 for Loss No. 11-000640. The check was deposited into a checking account in the name of Wendy Giddens at First Citizens Bank. Shortly thereafter, a check made payable to John Hudson Farms was written on the same First Citizen account in the amount of $90,000.00. The check was signed by Phil Hudson.

111. On January 30, 2012, a check from Ace Property and Casualty Insurance Company was made payable to Wendy Giddens and First Citizen Bank in the amount of $92,983.00 for Loss No. 11-000839. The check was deposited into a checking account in the name of Wendy Giddens at First Citizens Bank. The following

29

day, on January 31, 2012, a check made payable to John Hudson Farms was written on the same account in the amount of $93,000.00. The check is signed by Wendy Giddens.

112. On December 6, 2014, a check from Ace Property and Casualty Insurance Company was made payable to Wendy Giddens and Regions Bank in the amount of $62,679.00 for Loss No. 14-000329. This check was deposited directly into an account held in the name of John Hudson Farms, Inc. On the seven Production Worksheet/Proof of Loss forms submitted to Ace Property and Casualty Insurance Company, Wendy Giddens falsely certified on each that she had a 100% interest in the crops that were the subject of the insurance claim.

### Phil Hudson's Guilty Plea

113. On November 15, 2017, Phil Hudson pleaded guilty pursuant to a plea agreement to a Criminal Information charging him with theft of government funds in violation of Title 18, United States Code, Section 641. The case is captioned United States v. Phillip Hudson, and bears Case No. 5:17-CR-270-FL. The conduct that forms the basis of the Criminal Information relates to Phil Hudson's participation in the fraudulent scheme or device described herein.

### FIRST CAUSE OF ACTION
Collection of Debt Owed and Judicial Foreclosure

114. Plaintiff re-alleges and incorporates by reference the

paragraphs above as if set forth fully herein.

115. Wendy Giddens, Seth Giddens, Jeremy Hudson and Joshua Hudson have failed to make the payment on certain Notes set forth above as required therein, although due demand has been made upon them to do so.

116. Plaintiff is therefore entitled to recovery of the amounts owed, and to foreclosure of the related Security Agreements.

<u>SECOND CAUSE OF ACTION</u>
False Claims Act: Submission of False Claims

117. Plaintiff re-alleges and incorporates by reference the paragraphs above as if set forth fully herein.

118. By virtue of the acts described above, the Defendants knowingly presented or caused to be presented to the United States false or fraudulent claims for payment in violation of the False Claims Act, including those claims for FSA Farm Program Loans, FSA Program Payments, and the claims of the AIPS for reimbursment on crop insurance claims made by the individual Defendants to which they were not entitled.

119. The acts alleged herein constitute a fraudulent course of conduct.

120. Additionally, each withdrawal from an account at a bank or financial institution of the wrongfully received FSA Farm Program Loan funds and FSA Program Payments, each

31

acceptance of a direct deposit of wrongfully received FSA Farm Program Loan funds and FSA Program Payments into an account, and each endorsement and tendering of wrongfully received FSA Farm Program Loan funds and FSA Program Payments for cash or deposit to a bank or financial institution, constituted a materially false or fraudulent claim, in violation of the False Claims Act. Said claims were false or fraudulent by virtue of Defendants' fraudulent course of conduct.

121. Alternatively, each withdrawal from an account at a bank or financial institution of the wrongfully received FSA Farm Program Loan funds and FSA Program Payments, each acceptance of a direct deposit of FSA Farm Program Loan funds and FSA Program Payments into an account, and each endorsement and tendering of a U.S. Treasury Check for wrongfully received FSA Farm Program Loan funds and FSA Program Payments for cash or deposit to a bank or financial institution by Defendants constituted an implied false certification in violation of the False Claims Act.

122. As a result of the submission of the false claims specified herein, the Defendants received FSA Farm Program Loan funds and FSA Program Payments to which they were not entitled.

123. Further, the Defendants caused the submission of false claims for reimbursment of crop insurance indemnity payments the individual Defendants were not eligible to receive.

32

124. All of the actions described herein were undertaken knowingly by Defendants, including reckless disregard and deliberate ignorance, as defined in the False Claims Act.

125. By virtue of the false or fraudulent claims made by Defendants, the United States has suffered damages and is therefore entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

<u>THIRD CAUSE OF ACTION</u>
False Claims Act: Use of False Statements

126. Plaintiff incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

127. Defendants made, or used, or caused to be made or used, a false records or statements to get false or fraudulent claims paid or approved by United States, in violation of the False Claims Act, including but not limited to, the false and fraudulent Form 502s and 902s submitted to FSA (and false statements thereon), the false and fraudulent applications for crop insurance (and the false statements thereon), the false and fraudulent acreage reports (and the false statements thereon), and the false and fraudulent insurance claims (and false statements thereon).

128.    Said   false   records   or   statements   were   made   with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

129. By virtue of the false or fraudulent claims made, or caused to be made, by Defendants, the United States has suffered damages and is therefore entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

FOURTH CAUSE OF ACTION
False Claims Act: Conspiracy to Get a False Claim Paid

130. The   United   States   realleges   and   incorporates   by reference the above paragraphs as if set forth fully herein.

131. By virtue of the acts described above, Defendants knowingly conspired to present or cause to be presented a false or fraudulent claim for payment or approval, or made or used, or caused to be made or used, a false record or statement material to payment of a false or fraudulent claim in violation of the False Claims Act in that the claims, records and statements were false or fraudulent as described above, and resulted in Defendants' receipt of FSA Farm Program loans and FSA Program Payments to which the Defendants were not entitled, and the United States' reimbursement of the crop insurance indemnity payments to Defendants by the AIPs, which Defendants were not eligible to receive.

34

132. By virtue of the false or fraudulent claims made by Defendants or caused to be made by the Defendants, the United States has suffered damages and is therefore entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

<u>FIFTH CAUSE OF ACTION</u>
Payment by Mistake of Fact

133. Plaintiff re-alleges and incorporates by reference the paragraphs above as if set forth fully herein.

134. This is a claim against Defendants under mistake of fact.

135. The above described false claims, records and statements submitted or caused to be submitted to the United States constituted misrepresentations of material fact in that they misrepresented the individual Defendants' eligibility to receive FSA Farm Program Loan funds and FSA Program Payments, and crop insurance payments.

136. Plaintiff, acting on the accuracy and truthfulness of the information contained in the claims, records, and statements submitted, paid certain sums of money to which the individual Defendants were not entitled, and Defendants are thus liable to account for and pay such amounts, which are to be determined at trial, to the United States.

35

## SIXTH CAUSE OF ACTION
### Unjust Enrichment/Restitution

137. Plaintiff realleges and incorporates by reference the paragraphs above as if fully set forth herein.

138. This is a claim for recovery of monies by which Defendants have been unjustly enriched.

139. By virtue of the false claims and false statements described above, the individual Defendants wrongfully obtained FSA Farm Program loans, FSA Program Payments, and crop insurance indemnity payments to which they were not entitled.

140. By directly or indirectly obtaining FSA Farm Program Loans, FSA Program Payments, and crop insurance indemnity payments to which they was not entitled, Defendants were unjustly enriched at the expense of Plaintiff, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## SEVENTH CAUSE OF ACTION
### COMMON LAW FRAUD

141. Plaintiff incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

142. Defendants together made material and false representations to the United States with knowledge of their falsity or reckless disregard for the truth, with the intention that the United States act upon the misrepresentations to its

36

detriment, including that the individual Defendants were separate, individual farming operations when they were not.

143. The United States acted in justifiable reliance upon the mispresentations by approving the above-referenced FSA Farm Program Loans, FSA Program Payments, and, through RMA/FCIC, reimbursing the AIPs for crop insurance indemnity payments paid to the Defendants.

144. Had the true facts been known to the United States, it would not have approved and paid the above-referenced FSA Farm Program loans, FSA Program Payments, or, through RMA/FCIC, reimbursed the AIPs for the crop insurance indemnity payments paid to the Defendants.

145. By reason of this fraud, the United States has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff United States of America requests that judgment be entered in its favor and against Defendants as follows:

1. On the First Cause of Action:

For Judgment against Defendant Wendy Giddens the principal amount of $119,295.83 with interest of $3,041.36 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $9.3966 until paid, together with present and future costs and disbursements of this action and sale.

For Judgment against Defendant Seth Giddens, the principal

37

amount of $107,456.14 with interest of $1,901.08 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $7.7280 until paid, together with present and future costs and disbursements of this action and sale.

For Judgment against Defendant Jeremy Hudson the principal amount of $88,207.55 with interest of $2,811.93 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $6.1968 until paid, together with present and future costs and disbursements of this action and sale.

For Judgment against Defendant Joshua Hudson, the principal amount of $101,176.30 with interest of $3,403.62 accrued as of November 30, 2017, with interest accruing daily after that date in the amount of $6.9705 until paid, together with present and future costs and disbursements of this action and sale.

That Plaintiff's Security Agreements be foreclosed and that all right, title, and interest of, Defendants Wendy Hudson Giddens, Seth Giddens, Jeremy Hudson, Joshua Hudson or any persons holding by, through, or under them, including any equity or redemption or rights of power, and rights of any junior lienholders, be forever barred in and to the aforesaid personal property;

That an Order be issued directing the United States Marshal to enter upon the land of the Defendants, or other location, to seize and possess the farm machinery and equipment which serves

38

as collateral for the aforesaid loans;

Plaintiff further prays that upon foreclosure and possession, the said farm machinery and equipment be sold by the United States Marshal upon such time, notice, and conditions as the law may prescribe and the Court may require; and out of the proceeds of said sale, Plaintiff be paid the amount thereof on its claim above described.

2.   On the Second, Third, and Fourth Causes of Action, under the False Claims Act a judgment against Defendants, jointly and severally, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

3.   On the Fifth and Sixth Causes of Action, a judgment against Defendants, jointly and severally, for payment by mistake of fact and unjust enrichment, for the damages sustained and/or amount which Defendants received which were in error or by which Defendants were unjustly enriched, together with costs and interest.

4.   On the Seventh Cause of Action, for common law fraud, a judgment against Defendants, jointly and severally, in an amount to be determined, together with costs and interest.

5.   For such other and further relief as this Court deems just and proper.

<u>Jury Demand</u>

Plaintiff demands a trial by jury.

This the 10th day of January, 2018.

ROBERT J. HIGDON, JR.
United States Attorney

BY:<u>/s/ Joshua B. Royster</u>
    JOSHUA B. ROYSTER
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile:(919) 856-4821
E-mail: joshua.royster@usdoj.gov
N.C. Bar # 28785
Attorney for Plaintiff


BY: <u>/s/ Roberto F. Ramirez</u>
    ROBERTO F. RAMIREZ
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (9l9) 856-4530
Facsimile: (919) 856-4821
Email: Roberto.ramirez@usdoj.gov
Texas Bar No. 00784809
Attorney for Plaintiff