UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO: 7:18-CV-7-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER AWARDING DEFAULT |
| v. ) | JUDGMENT AGAINST DEFENDANT |
| ) | SETH GIDDENS WITH EXPRESS |
| ) | FINDINGS OF FALSE STATEMENTS, |
| JOHN HUDSON FARMS, INC., ) | FALSE CLAIMS AND FRAUDULENT |
| ET AL., ) | SCHEME |
| ) | |
| Defendants. ) | |

This matter is before the Court on the Motion for Default Judgment filed by Plaintiff United States of America against Defendant Seth Giddens pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

Seth Giddens failed to appear, plead, or otherwise defend this action and the Clerk of Court entered Default, upon Motion of the Plaintiff. Plaintiff moved for Default Judgment against Seth Giddens in the amount of $2,046,615, based upon the Complaint and the Declaration provided. Default Judgment is warranted.

## FINDINGS OF FACT

The facts alleged in the Complaint are deemed admitted based upon the Entry of Default. (DE 34). This Court entered summary judgment against Seth Giddens and other defendants for part of the related loan liabilities in United States v. Wendy Hudson Giddens,

1

et. al., Case No. 7:16-CV-7-FL, and directed judgment against Seth Giddens for over $109,000 based upon his failure to repay FSA loans. In addition to the admissions in this action and summary judgment in the related FSA loan case, Seth Giddens' uncle, Defendant Phil Hudson, has admitted in a Plea Agreement that he is liable for $676,536 in criminal restitution for theft of Government funds. Phil Hudson pleaded guilty to theft of government funds in violation of 18 U.S.C. § 641, in <u>United States v. Phillip Hudson</u>, Case No. 5:17-CR-270-FL (DE 12). This theft of government funds plea is also related to Seth Giddens' fraudulent claims and false statements to obtain part of the FSA program payments for the family farming operation at issue in this action (but not other claims or USDA crop insurance payments set out in the Complaint).

The following facts are found by the Court based upon the Declaration of USDA Special Agent Miles Davis and the Complaint.

1. Seth Giddens' uncle, Phil Hudson, managed the day-to-day operations of John Hudson Farms ("JHF"), a North Carolina corporation that was part of a combined family farming operation which included soybeans, sweet potatoes, and tobacco. (DE 1 Compl. ¶¶ 5-6, 18, Davis Declaration at 1 (hereafter "Declaration").

2. Seth Giddens and the other defendants (five other family members) falsely purported to be separate, individual farming operations in numerous forms and applications provided to both the

2

USDA Farm Service Agency ("FSA") and USDA Risk Management Agency's Federal Crop Insurance Corporation ("FCIC") (through private approved insurance providers or "AIPs"). (DE 1 Compl. ¶¶ 18-20, Declaration at 2).

3. The Defendants used these fraudulent "shell farming operations" to fabricate eligibility and obtain additional funds from FSA programs, as well as FCIC crop insurance. The Defendants ultimately used program funds and loans fraudulently obtained from the FSA (and FCIC crop insurance) to support the single farming operation of JHF, not six individual farm operations. (DE 1 Compl. ¶¶ 18-20, Declaration at 3).

4. The Defendants' fraudulent schemes, false claims and false statements included three types of damages: (1) payments under FSA programs without required eligibility, (2) farm loans under FSA programs without required eligibility, and (3) payment of federal crop insurance claims without an insurable interest. (DE 1 Compl. ¶¶ 18, 19, 20, Declaration at 4).

**Factual Allegations Related to FSA Program Payments**

5. Payments under FSA programs are made from the United States, based upon payment limitations and eligibility requirements that the recipient must satisfy. (DE 1 Compl. ¶¶ 12-15). These regulations require, inter alia, that an applicant for funding truthfully complete and sign certain documents, including

3

Form CCC-502A, titled "Farm Operating Plan for Payment Eligibility Review For An Individual" ("Form 502"), and Form CCC-902I, titled "Farm Operating Plan for An Individual" ("Form 902"). (DE 1 Compl. ¶¶ 16-17, Declaration at 5).

6. Seth Giddens, through Jacob Giddens and a power of attorney, submitted a false Form 502 for 2008. (DE 1 Compl. ¶ 21). Seth Giddens, through Phil Hudson and a power of attorney, submitted false Form 902s for 2009, 2010, and 2012. (DE 1 Compl. ¶¶ 34-36). Each of the 502s and 902s submitted, or caused to be submitted, were false. (DE 1 Compl. ¶¶ 37-40, 42-48, Declaration at 6).

7. The false statements on the Form 902s submitted enabled Seth Giddens and his family members to circumvent FSA eligibility requirements and limitations in order to obtain improper payments for 2009 through 2014. (DE 1 Compl. ¶¶ 49-50, Declaration at 7).

8. Seth Giddens caused the submission of at least 3 false FSA 902s for himself and family members from 2008 to 2012. (DE 1 Compl. ¶¶ 34-36, Declaration at 8).

9. FSA paid at least $222,489 to Seth Giddens and JHF as a result of the false statements and false claims made. (DE 1 Compl. ¶ 61, Declaration at 9).

10. Seth Giddens made false representations with the knowledge that the information was false and that the information

4

would be used by the FSA to determine eligibility for funding as persons actively engaged in farming. (DE 1 Compl. ¶ 40). The individual defendants were determined to be eligible for FSA funds based on these false Form 902 submissions. (DE 1 Compl. ¶ 41, Declaration at 10).

**<u>Factual Allegations Related to FSA Farm Program Loan Fraud</u>**

11. Defendant Seth Giddens (and defendants Wendy Giddens, Joshua Hudson and Jeremy Hudson) individually sought and obtained Farm Program Loans from FSA, with current principal balances totaling $107,456, based upon false Form 502s and Form 902s (as described above) and false loan applications, including false representations to FSA at the time he applied for these loans that each Defendant operated a separate, individual farming operation. (DE 1 Compl. ¶¶ 71-72, 74-79, 83-84, Declaration at 11).

12. Seth Giddens caused to be signed various documents in connection with obtaining the above FSA Farm Program Loans, including the false Form 902s, in furtherance of his fraudulent scheme with other defendants and in order to avoid payment eligibility and limitation rules for both FSA Farm Program Loans and FSA Program Payments. (DE 1 Compl. ¶¶ 19, 34-37, 71-72, 74-79, 84, 131, Declaration at 12).

13. Seth Giddens presented or caused to be presented to FSA false Form 502s and 902s and false loan applications in order to

5

facilitate Farm Program loans of at least $107,456 to which he was not entitled, and Seth Giddens conspired with these defendants in the fraudulent scheme to obtain Farm Program Loans that were used in the JHF combined family farming operation. (DE 1 Compl. ¶¶ 19, 34-37, 84-85, 131, Declaration at 13).

**Factual Allegations Related To FCIC Crop Insurance Payments**

14. In addition, Seth Giddens made false crop insurance indemnity claims to FCIC through AIPs. (DE 1 Compl. ¶¶ 4, 86-89, 95, Declaration at 14). Specifically, Seth Giddens and the other defendants claimed their purported individual farming operations were eligible for crop insurance, but in fact each individual lacked a separate insurable interest in JHF crops, that being the value of the producer's interest in a crop that was at risk from insurable cause of loss. (DE 1 Compl. ¶¶ 90, 91, 96, 97, 98). Instead, JHF had the insurable interest in its crops, or at least Seth Giddens and the individual defendants had a lesser interest than that stated. (DE 1 Compl. ¶ 106, Declaration at 14).

15. Seth Giddens caused false representations to be made in order to obtain FCIC funds for JHF. The false statements to obtain crop insurance payments were contained within documents caused to be submitted for payment. Defendants submitted false acreage reports and insurances claims annually from 2010 through 2015 through the AIPs. (DE 1 Compl. ¶ 102). In each of those years,

6

Defendants submitted false claims with the AIPs, the AIPs paid Seth Giddens, and the FCIC reimbursed the AIPs based upon these false representations. (DE 1 Compl. ¶ 103). As a result, Seth Giddens (and other Defendants) obtained funds for which he was ineligible because he falsely stated the individual Defendants' insurable interest in JHF crops. (DE 1 Compl. ¶¶ 104, 105, Declaration at 15).

16. FCIC reimbursed at least $308,260 for these false claims, including the claims for which Seth Giddens and the other defendants were paid. (DE 1 Compl. ¶ 103). These crop insurance funds were transferred by Seth Giddens and other Defendants to JHF for JHF's benefit, including by Defendants' depositing the funds into individual checking accounts and then drawing checks from those accounts to pay JHF. (DE 1 Compl. ¶¶ 108-112, Declaration at 16).

**Factual Allegations Related to False Claims Act Violations For FSA Program Payments, FSA Loans, and FCIC Crop Insurance Payments**

17. Seth Giddens knowingly presented or caused to be presented false and fraudulent claims to the United States, including claims for FSA program payments, FSA loan payments, and FCIC crop insurance claims. (DE 1 Compl. ¶¶ 18-20, 34-39, 102, 108-110, 118-124, 131, Declaration at 17).

18. Seth Giddens knowingly made or caused to be made false statements material to false claims to the United States, including

7

claims for FSA program payments, FSA loan payments, and FCIC crop insurance payments. (DE 1 Compl. ¶¶ 18-20, 34-39, 102, 108-110, 127-128, 131, Declaration at 18).

19. Seth Giddens acted with actual knowledge and reckless disregard that the statements and claims at issue were false, including false Form 902s, Form 502s, acreage reports, insurance claims, and fraudulent requests for payments for FSA programs, FSA loans, and FCIC crop insurance. (DE 1 Compl. ¶¶ 18-20, 22, 34-39, 95, 99, 102, 113, 124, 128, 131, Declaration at 19).

20. Seth Giddens participated in the fraudulent scheme in order to obtain FSA program payments, FSA loans, and FCIC crop insurance payments that exceeded the requirements and limitations for JHF and himself. (DE 1 Compl. ¶¶ 18-20, 117-132, Declaration at 20).

21. Seth Giddens made false representations and committed fraud to obtain USDA program payments, loans, and crop insurance payments, including signing and using false forms and applications to obtain payments. (DE 1 Compl. ¶¶ 18-20, 117-132, Declaration at 21).

22. Seth Giddens made materially false written statements respecting his financial condition and related matters, with the intent to deceive USDA in order to obtain federal payments, and USDA relied upon the false statements in making payments. (DE 1

8

Compl. ¶¶ 18-20, 40, 52, 85, 96-101, 117-132, Declaration at 22).

23. Seth Giddens caused total single damages of at least $638,205 under the False Claims Act through causing false claims, causing false statements, and engaging in a fraudulent scheme to obtain USDA payments, which included at least $222,489 in FSA program payments, at least $107,456 in FSA loan payments, and at least $308,260 in crop insurance payments. (DE 1 Compl. ¶¶ 18-20, 51, 83, 103, 117-132, Declaration at 23).

24. Seth Giddens is further liable for 12 statutory penalties, including 3 false 902 statements, at least 3 false crop insurance applications, at least 3 false acreage reports, and at least 3 false insurance claims for 2009-2014 that he caused to be used (as well as other false statements and false claims). (DE 1 Compl. ¶¶ 18-20, 34, 35, 36, 37, 50, 88, 94, 95, 102, 103, 117-132, Declaration at 24).

25. Seth Giddens is liable under the False Claims Act for treble damages of $1,914,615 (three times the single damages established), and $132,000 in penalties (for 12 penalties at $11,000 per penalty), for a total of $2,046,615. (DE 1 Compl. ¶¶ 18-20, 34, 35, 36, 37, 50, 51, 83, 88, 94, 95, 102, 103, 117-132, Declaration at 25).

9

## CONCLUSIONS OF LAW

Defendant Seth Giddens is liable under the False Claims Act for damages and penalties based upon the Entry of Default, the allegations of the Complaint, and the Special Agent's Declaration, as set out in the above Findings of Fact.

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). If, after the entry of default, Plaintiff's complaint does not specify a "sum certain" or "a sum that can be made certain by computation," the Court may enter a default judgment against the defendant. See Fed.R.Civ.P. 55(b)(1), (2).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Richardson v. Bostick, 2014 WL 3508916 at *5 (E.D.N.C. July 14, 2014); Weft, Inc. v. GC Inv. Assocs., 630 F.Supp. 1138, 1141 (E.D.N.C. 1986). However, "a default is not treated as an absolute confession by the defendant of his liability" and "the court must consider whether the unchallenged

10

facts support the relief sought." See, e.g., Ryan, 253 F.3d at 780; Richardson, 2014 WL 3508916 at *5. The party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered, and attempts by the party against whom a default has been entered to attack the validity of the allegations deemed proven by the default are to be strictly circumscribed. See, e.g., Ryan, 253 F.3d at 780.

If the court determines that liability is established and default judgment is warranted, it then must make an independent determination of the appropriate amount of damages. The allegations in the complaint with respect to the amount of the damages are not controlling. Ryan, 253 F.3d at 780-81; J&J Sports Productions, Inc. v. Bullard, 2012 WL 5844807 at * 1 (E.D.N.C. Nov. 19, 2012); Richardson, 2014 WL 3508916 at *6; Arista Records, LLC v. Gaines, 635 F.Supp.2d 414, 416-17 (E.D.N.C. 2009); Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Fed.R.Civ.P. 55(b)(2)(B).

While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on declarations or documentary evidence in the record to determine the appropriate damages amount. See, e.g., American Dairy Queen Corp. v. YS & J Enterprises, Inc., 2014 WL 4055550 at *2 (E.D.N.C. Aug. 14, 2014)(hearing not warranted because

11

"sufficient affidavits and supporting documents to enable the court to calculate damages"); J&J Sports, 2012 WL 5844807 at *1; EEOC v. Carter Behavior Health Services, 2011 WL 5325485, at *4 (E.D.N.C. Oct. 7, 2011); United States v. Walker, 2017 WL 3974242 at *2. (W.D.N.C. September 8, 2017); EEOC v. North Am. Land Corp., 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010). In entering default in a False Claims Act case, a hearing may not be necessary if the specific amount of the false claims are set forth in the Complaint. United States v. Graham County Soil & Water Conservation District, 2016 WL 910191 at *2 (W.D.N.C. March 9, 2016).

The well-pleaded facts contained in the Complaint, along with the Declaration of Special Agent Miles Davis, are sufficient to establish a basis for the relief sought and the damages set forth in the Complaint. See, e.g., Arista Records, 635 F.Supp.2d at 416; Dairy Queen, 2014 WL 4055550 at *2; Walker, 2017 WL 3974242 at *2; Graham County, 2016 WL 910191 at *2. The Court has discretion under Fed. R. Civ. P. 55(b)(2) to enter a judgment after a default has been entered.

The False Claims Act provides for treble damages, plus $5,500 to $11,000 per false claim as a required statutory penalty. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9); United States v. Byrd, 100 F.Supp.2d 342, 344 (E.D.N.C. 2000). A penalty may be awarded for each separate false form submitted as part of a false claim.

12

United States v. Tuomey, 792 F.3d 364, 386 (awarding penalty for each separate claim based upon each form submitted). The Court may award FCA treble damages and penalties on default judgment or summary judgment. See, e.g., Graham County, 2016 WL 910191 at *2 (default judgment awarding treble damages and six separate penalties); Byrd, 100 F.Supp.2d at 342, 344 (summary judgment awarding 264 penalties for each separate claim); United States v. Convalescent Transports, Inc., 2007 WL 2090210 at *7 (E.D.N.C. July 19, 2007)(awarding treble damages and one maximum penalty established).

The Complaint and Declaration establish that Seth Giddens participated in a scheme to present false statements and fraudulent claims to obtain FSA program payments and FCIC insurance payments for himself and JHF. (Findings of Fact 2-4, 6-23 above).

The Complaint and Declaration establish that Seth Giddens caused the false statements and false claims with actual knowledge. (Findings of Fact 10, 19 above).

These Findings of Fact enable the Court to determine damages (trebled under False Claims Act) and statutory penalties (per false claim or false statement). Seth Giddens caused single damages in the amount of $638,205, comprised of $222,489 in FSA program payments, $107,456 in FSA loan payments, and $308,260 in FCIC crop payments. (Findings of Fact 23 above). Seth Giddens also caused

13

to be used 12 false statements and false claims. (Findings of Fact 24 above).

Seth Giddens is jointly and severally liable under the False Claims Act for treble damages of $1,914,615 (three times single damages established), and $132,000 in penalties (for 12 penalties at $11,000 per penalty), for a total of $2,046,165. (Findings of Fact 23-25 above).

For the foregoing reasons, the Clerk of Court is directed to enter Default Judgment against Defendant Seth Giddens in the amount of $2,046,615, based upon the express findings that he caused false statements, caused false claims, and engaged in a fraudulent scheme to obtain federal funds.

SO ORDERED, this the 29th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Court Judge